UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **BRIAN C. MITCHELL,** | ) | CASE NO. 1:12CV1059 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **FEDERAL RESERVE BANK** | ) | |
| **OF CLEVELAND,** | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #17) of Defendant, Federal Reserve Bank of Cleveland, for Summary Judgment. For the following reasons, the Motion is denied.

**I. FACTUAL BACKGROUND**

Plaintiff, Brian Mitchell, began his employment with Defendant, Federal Reserve Bank of Cleveland, on July 5, 2005. At the time of his termination, Plaintiff was a Senior Operations Analyst in the Cash Department. His duties included analyzing data from the Standard Cash Automation database and preparing statistical reports for the Board of

Governors. If the data and balances in these reports did not reconcile with existing information, Plaintiff was responsible for investigating and correcting the errors.

The Federal Reserve Bank accepts deposits of excess and unfit currency and processes currency orders from financial institutions. The term "new" currency is used to refer to money printed by the Bureau of Engraving and Printing that has not been circulated in the general public. The term "fit" currency refers both to currency that has been circulated in the general public, as well as "new" currency that has been received from another Reserve Bank, but not yet circulated. A team in the Cash Department is assigned to each container of "new" currency; and is responsible for recording the serial numbers of "new" currency with a denomination of $20.00 or more. The assigned team remains accountable for any balance inconsistencies or any other errors related to a container. Plaintiff was responsible for preparing statistical reports for the Board of Governors, reflecting the amount of "new" and "fit" currency the Bank held in its inventory.

Defendant has a written progressive discipline policy set forth in its Employee Handbook; and Plaintiff acknowledged receipt of the Handbook on July 5, 2005. (ECF DKT #19-4, p. 39).

On February 13, 2009, an oral disciplinary notice was issued against Plaintiff for failure to complete an assigned task. On March 17, 2009, Plaintiff received a written warning for performance errors and for failure to complete critical tasks in a timely manner. Plaintiff does not dispute these disciplinary incidents.

On July 24, 2009, Plaintiff presented Pam Lucey, Defendant's Human Resources Manager, with a letter from his Cleveland Clinic physician, stating that he had been

diagnosed with the condition known as narcolepsy with cataplexy, and requesting reasonable accommodations necessary to perform his duties as a Senior Operations Analyst.

On August 13, 2009, a Probation Progressive Disciplinary Action Notice was issued to Plaintiff, because Plaintiff committed expense and accounting data errors in the month of July; and because, despite the earlier written warning, Plaintiff's job performance continued to be unsatisfactory.

On August 24, 2009, Plaintiff delivered an email and a letter to Mike Vangelos, Defendant's Ombuds Officer.  Plaintiff asked Vangelos to commence the EEO complaint process; because while his request for reasonable accommodation was pending, he was placed on probation.  Plaintiff stated that the "discipline constituted an act of discrimination against me because of my disability."  (ECF DKT #17-2, Ex. BB).

On November 6, 2009, the numbers for "new" and "fit" currency held in the Bank's inventory did not balance in Plaintiff's report.  According to Plaintiff, he asked Deborah McCormack, an employee in the Cash Department, to remove containers from the vault to permit a visual inspection of the currency.  She told him that the visual inspection process would take too much time, particularly since it was the end of the day.  Plaintiff asserts that McCormack allowed him to access the internal Table Guard computer application and to change the classification of five randomly-selected containers from "new" to "fit."  Plaintiff did not alert the team assigned to these containers; serial numbers were not properly recorded; and currency, upon which the Board of Governors had placed a "hold," was allowed into circulation.

Michael Kelly, Manager of the Bank's Cash Department at the time, conducted an

investigation into the events of November 6, 2009.  Employees, like McCormack, as well as Plaintiff's supervisors, denied instructing and/or authorizing Plaintiff to change random containers of "new" currency to "fit."  As a result, on November 20, 2009, Kelly recommended the immediate termination of Plaintiff's employment for falsification of currency inventory data and breach of trust.  (ECF DKT #19-5, Ex. V).  The recommendation was approved and Plaintiff's termination was effective on November 20, 2009.  Plaintiff received his official notification, by letter dated November 23, 2009, from Pam Lucey in Human Resources.

In his Complaint, Plaintiff alleges claims of retaliation and discrimination on the basis of disability under the Americans with Disabilities Act ("ADA") relating to his November 20, 2009 discharge.  Defendant moved for summary judgment on February 19, 2013.  In his response on March 18, 2013, Mitchell advised the Court and Defendant that he will not pursue his claims of disability discrimination; but that his retaliation claim remains viable.  Defendant's Reply Brief was filed on April 2, 2013.

## II. LAW AND ANALYSIS

### Civil Rule 56 Standard

A summary judgment should be granted if the pleadings, depositions, documents, electronically stored information, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See, Fed.R.Civ.P. 56(a) and (c).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.  This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hospital Ass'n*., 78 F.3d 1079, 1087 (6th Cir.1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir.1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**ADA Retaliation**

Under the ADA, an employer may not "discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge ... under [the ADA]." 42 U.S.C. § 12203(a).  The Sixth Circuit analyzes ADA retaliation claims using the same framework as other statutory retaliation

claims. *See, e.g., Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir.1999) (noting that the "essential framework" of retaliation claims under the ADA, Title VII, NLRA and other statutes remains the same). Where a plaintiff relies upon circumstantial evidence of retaliation, the *McDonnell Douglas/Burdine* burden-shifting framework applies.

### *Prima Facie* Elements

To establish a *prima facie* case of unlawful retaliation, a plaintiff must demonstrate: (1) he engaged in a protected activity; (2) defendant knew he engaged in this protected activity; (3) defendant subsequently took an employment action adverse to plaintiff; and (4) a causal connection between the protected activity and the adverse employment action exists. *Harris v. Metro. Gov't of Nashville & Davidson Cnty.,* 594 F.3d 476, 485 (6th Cir.2010); *Abbott v. Crown Motor Company, Inc.*, 348 F.3d 537, 542 (6th Cir. 2003) (*rehearing denied* January 21, 2004). Plaintiff need not prove his case by a preponderance of the evidence at the *prima facie* stage. *Singfield v. Akron Metropolitan Housing Authority, et al.*, 389 F.3d 555, 563 (6th Cir.2004). "[T]he burden of establishing a prima facie retaliation case is easily met." *Id.*; *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000).

### Employer's Non-Retaliatory Explanation

> Once this [plaintiff's] showing is made ... the defendant must articulate a legitimate nonretaliatory reason for its action before the burden shifts back to plaintiff to show that the proffered reason was not its true reason but merely a pretext for retaliation. The burden of persuasion remains with the plaintiff throughout. *Harris*, 594 F.3d at 285.

In order to satisfy its burden, Defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248,

-6-

257 (1981).  "The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was [terminated] for a legitimate, nondiscriminatory reason.  The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Id*. at 254.  *See, Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 (1978).  " It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id*.

**Pretext**

When the burden shifts back to Plaintiff, he must demonstrate, by a preponderance of the evidence, that Defendant's proffered reasons for the adverse employment action were pretextual.   "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Ladd v. Grand Trunk W. R.R., Inc.,* 552 F.3d 495, 502 (6th Cir.2009); *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000).

**Mitchell's ADA Retaliation Claim**

Defendant Federal Reserve Bank does not dispute that Plaintiff Mitchell was engaged in a protected activity when he submitted his August 24, 2009 internal complaint to Vangelos, nor that Plaintiff suffered an adverse employment action when he was terminated on November 20, 2009.

However, Defendant (through Michael Kelly, Manager of the Bank's Cash Department) does not agree that it knew Plaintiff engaged in protected activity.  "In fact, I was unaware that Mitchell allegedly had a disability, that he had made any accommodation requests or that he had made any internal complaint at the time I recommended his

termination." (ECF DKT #17-3, Kelly Declaration, ¶ 11).

According to Sixth Circuit precedent, "direct evidence of such knowledge or awareness is not required, and ... a plaintiff may survive summary judgment by producing circumstantial evidence to establish this element of [his] claim." *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir.2002). Furthermore, "knowledge of a plaintiff's protected activity can be inferred from evidence of the prior interaction of individuals with such knowledge and those taking the adverse employment action." *Mulhall*, 287 F.3d at 553 (citation omitted).

The parties present evidence to the Court in their summary judgment briefing which supports the inference that Defendant knew of Plaintiff's protected activity. For instance, Plaintiff met with his supervisor, Patrick Geyer, in early August of 2009, to discuss his requested accommodations. In his investigation, prior to recommending termination, Kelly conducted a (in his words) thorough inquiry of "Bank records, emails and reports and interviewed multiple employees, including Mitchell." (ECF DKT #17-3, Kelly Declaration, ¶ 9). One of the three individuals, which Kelly asked to approve Mitchell's termination, was Patrick Geyer. When viewed in the light most favorable to Plaintiff, Geyer's awareness of Mitchell's disability and requests for accommodations, Mitchell's written complaint made to Vangelos and forwarded to the Bank's EEO Officer, and Kelly's self-described "thorough investigation" of employees and personnel records, all provide circumstantial evidence supporting the inference that Defendant knew about Plaintiff's protected activity. Thus, Mitchell has satisfied the second prong of his *prima facie* retaliation case.

Defendant asserts that Plaintiff cannot meet his *prima facie* burden, since he cannot offer any evidence of a causal connection other than the mere temporal proximity — three

months — between his complaint and his termination.  Defendant further protests that, "[f]or every Sixth Circuit decision Mitchell cites in support of his position that three months, standing alone, is sufficient to establish a causal connection, the Defendant Federal Reserve Bank of Cleveland (the "Bank") can offer two that state exactly the opposite."  (ECF DKT #22, p. 2).

In a recent opinion, *Fuhr v. Hazel Park School District*, 710 F.3d 668 (6th Cir.2013), the Sixth Circuit notes that "temporal proximity always plays a role in establishing a causal connection."  *Id*. at 675.  Further, "where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."  *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir.2008).  Significantly, this Circuit has acknowledged "that temporal proximity of three months, in combination with increased scrutiny, is sufficient to satisfy the causation prong."  *Hamilton v. Gen. Elec. Co.*, 556 F.3d 435-36 (6th Cir.2009).

The Court recognizes the complicated state of Sixth Circuit precedential case law on the issue of temporal proximity in retaliation actions.  Yet, in the abundance of caution, the Court believes it has no choice but to find that the causation prong of Mitchell's *prima facie* case is satisfied by the mere three-month span of time between Mitchell's internal complaint and his termination from employment.

Since Plaintiff has satisfied his *prima facie* retaliation case burden, the Bank must next articulate a legitimate, non-discriminatory reason for firing him.  In his Response, Plaintiff concedes that Defendant has articulated a non-discriminatory reason for his termination, i.e.,

falsification and breach of trust.  (See Kelly Declaration, ECF DKT #17-3, ¶¶ 9, 11).

The burden now shifts back to Plaintiff to demonstrate, by a preponderance of the evidence, that Defendant's proffered reasons for the adverse employment action were pretextual.

Pretext can be established by noting inconsistencies in the proffered reason for the adverse employment action.  *Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 523 (6th Cir. 1997).  According to Mitchell, Patrick Geyer informed him of his termination on November 20, 2009, telling him he was being let go for poor performance and for causing the Bank to violate Board policy.  (Mitchell Deposition, ECF DKT #19-2, p. 21).  In its July 2, 2010 position statement to the Equal Employment Opportunity Commission, Defendant explained that Plaintiff "used his authority to access a highly controlled computer application and to falsify the records of five containers of currency within the Cash database in order to ensure that the statistical reports that he was preparing balanced."  (ECF DKT #21-4, p. 5).  This conduct violated the Federal Reserve System's Custody Control Principles and Standards, and warranted disciplinary action, including dismissal.  According to the February 19, 2013 Declaration of Michael Kelly, Plaintiff was terminated due to "falsification of currency inventory data and breach of trust."  (ECF DKT #17-3, ¶ 9).  Viewed in a light most favorable to the non-movant, these inconsistent statements evidence shifting reasons for the adverse employment action taken against Plaintiff.

In his deposition, Plaintiff testifies that Deborah McCormack, a Cash Department employee, said to him: "We don't have time for us to pull all these containers out.  Just change these five containers."  (ECF DKT #19-2, p. 14).  In his Affidavit, Mitchell states: "I

fully explained the situation and problem to Kelly, and described to him, in detail, how I had reclassified the currency in five containers of currency while proceeding under the auspices of Deborah McCormack. * * * Kelly accepted my explanation and proceeded to work with me to bring the problem account into balance." (ECF DKT #21-1, ¶¶ 3-4). Based upon these pieces of evidence, Plaintiff argues a jury could find Defendant's proffered reasons for termination were not reasonably or honestly held.

Deborah McCormack denies authorizing Plaintiff's actions, and testifies that she simply does not recall. (ECF DKT #21-5, p. 59). As for the interaction with Kelly, which allegedly occurred the day after Plaintiff reclassified the currency, Defendant argues it could not have taken place. The day after November 6, 2009 was a Saturday and the Bank was not open for business. (ECF DKT #22, p. 10).

The Court finds that this credibility dispute over the circumstances surrounding Plaintiff's actions on November 6, 2009 is a matter properly left to the trier of fact.

"Courts have recognized that in discrimination and retaliation cases, an employer's true motivations are particularly difficult to ascertain." *Singfield*, 389 F.3d at 564, quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983). "We agree that caution should be exercised in granting summary judgment once a plaintiff has established a prima facie inference of retaliation through direct or circumstantial evidence." *Singfield*, 389 F.3d at 564.

In view of this Court's obligation to proceed warily when analyzing pretext, and in consideration of all the evidence presented, the Court finds that Plaintiff has demonstrated a genuine material factual issue for the jury as to Defendant's proffered reasons for terminating

his employment.

## III. CONCLUSION

In light of the foregoing analysis, the Motion (ECF DKT #17) of Defendant, Federal Reserve Bank of Cleveland, for Summary Judgment, on Plaintiff Brian C. Mitchell's only remaining claim of ADA retaliation, is denied.

**IT IS SO ORDERED.**

**DATE: 5/14/13**

 S/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**